(74 South. 702)

No. 21487.

GUILLOT v. GUILLOT et al.

(March 12, 1917.)

*(Syllabus by the Court.)*

1. FRAUDS, STATUTE OF ☞17—PROMISE TO PAY DEBT OF ANOTHER.

The prohibition is absolute that parole evidence shall not be received to prove any promise to pay the debt of a third person. Civ. Code, art. 2278.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 13, 16, 17.]

2. FRAUDS, STATUTE OF ☞17 — PROMISE TO PAY DEBT OF ANOTHER.

A verbal promise to pay the debt of a third person can have no legal effect.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 13, 16, 17.]

Appeal from Eleventh Judicial District Court, Parish of Natchitoches; William T. Cunningham, Judge.

Suit by James P. Guillot against Mrs. Fanny C. Guillot and Breazeale & Breazeale, her attorneys. Suit dismissed as to Breazeale & Breazeale, and plaintiff appeals. Affirmed.

See, post, 74 South. 704, post, p. 86.

Guion, Lambremont & Hebert, of Lutcher, and J. D. Rusca, of Natchitoches, for appellant. Breazeale & Breazeale, of Natchitoches, for appellee.

LAND, J. Plaintiff sued his wife and her attorneys to recover the sum of $41,699.74, subject to a credit of $14,172.64 represented by certain cotton held in pledge by H. & C. Newman, on a cause of action, which may be briefly stated as follows:

Plaintiff and his wife, Mrs. Fannie Chopin-Guillot, were married under the régime of the community on August 31, 1911, and he immediately assumed the administration of her paraphernal estate, consisting of movables and immovables of great value, and continued such administration until January 1, 1915.

That in the summer of 1914, differences having arisen between the plaintiff and his wife, a contract was drawn up between them, and, after the same had been fully approved by them, was signed by their respective attorneys.

The said contract stipulated:

First. That Mrs. Guillot should resume the full control and administration of her separate property on January 1, 1915.

Second. That there should be legal dissolution of the community between them at the instance of the wife and without resistance on the part of husband after January 1, 1915.

Third. "Mr. J. P. Guillot should have paid to and returned to him by Mrs. Guillot the sum of $5,000, a manual gift made him by Mrs. Guillot immediately preceding their wedding."

Fourth. The community of acquêts and gains to be settled in the following manner:

An expert accountant to make an investigation and report of the condition of the community, to be assisted in arriving at a valuation of the improvements put on the separate property of Mrs. Guillot by two appraisers, one selected by her, and one selected by Mr. Guillot, the two to call in an umpire in the case of disagreement.

On the basis of such report Mrs. Guillot was to take over and acquire the community interest, assuming all obligations and acquiring all assets, by paying Mr. Guillot 50 per cent. of its net value of the community, if any, in cash.

Fifth. In the event that Mr. Guillot should receive $5,000 or more in cash for his interest in the community, the payment of the $5,000 stipulated in article 3, supra, was to be reduced to $2,500.

Sixth. No suit of any kind was to be filed by Mrs. Guillot against Mr. Guillot prior to January 1, 1915.

And no suit for separation from bed and board was to be filed prior to January 1, 1916.

The respective attorneys representing the parties each personally bound and obligated himself as surety that the agreement of September 10, 1914, would be carried out to the letter.

A public accountant and two appraisers were selected, and an umpire was chosen, pursuant to said agreement, and they began their work about December 7, 1914.

Mrs. Guillot on January 1, 1915, resumed the administration of her paraphernal estate.

After January 1, 1915, Mrs. Guillot sued her husband for a dissolution of the community, and on February 5, 1915, obtained judgment perpetually dissolving the same.

That about January 26, 1915, Mr. Guillot, through his attorneys, sent to the creditors of the community printed copies of the contract of September 10, 1914, accompanied by circular letters, which contained the following statement:

"We inclose you a copy of an agreement entered into by the attorneys representing Mr. and Mrs. J. P. Guillot September 10, 1914, and which said attorneys personally pledged themselves to have carried out in good faith."

That on January 27, 1915, Mr. Guillot's attorneys addressed a letter to Messrs. Breazeale & Breazeale, attorneys for Mrs. Guillot, inclosing them a copy of the said circular letter and printed contract, putting Mrs. Guillot in default on said contract; and said letter contained the following clause:

"You will recall that we, the attorneys, personally pledged ourselves to see that the agreement of September 10, 1914, was carried out to the letter. We certainly expect you to fulfill this agreement."

That in their answer to said letter Messrs. Breazeale & Breazeale said:

"We are perhaps more anxious than you are to close this matter, and are very anxious to carry out the agreement between you and ourselves."

That on February 6, 1915, the public accountant submitted his report and supplemental report on his examination of the affairs of the parties and the community, which reports were filed in court with the petition.

That said report shows that the plaintiff is entitled to recover the sum of $41,699.74.

That on February 12, 1915, on the receipt of said report, plaintiff made a tender of the entire community to the defendant.

That the defendant since the filing of her petition for a dissolution of the community has taken possession of and assumed the management and control of property belonging to the community, and is thereby "estopped from refusing to comply with her contract of September 10, 1914."

On exception by Breazeale & Breazeale of vagueness, the plaintiff amended his petition as follows:

"The obligation of suretyship in question was not in writing originally, but was verbal; that the petition shows and alleges that said obligation was later acknowledged in writing.

"The letter of Breazeale & Breazeale to Guion, Lambremont & Hebert, annexed to and made part of the petition, is the written acknowledgment alleged in the petition."

Breazeale & Breazeale thereupon excepted that the petition, so far as it concerns them, discloses no right or cause of action against them.

This exception was sustained, and the suit was dismissed. The plaintiff has appealed.

[1] The prohibition is absolute that "parole evidence shall not be received to prove any promise to pay the debt of a third person," and the law is imperative that such a promise to pay shall be proved by written evidence signed by the party, or by his agent or attorney in fact, specially authorized to do so. C. C. art. 2278.

[2] Hence a verbal promise to pay the debt of a third person can have no legal effect.

The subject-matter of the correspondence between the attorneys referred to in the petition was the execution of the agreement which had been signed by the attorneys for their respective clients.

Plaintiff's attorneys complained of delays on the part of the defendant and her attorneys in the matter of appraisement of the community property and of the institution of the suit for a dissolution of the community.

After writing about the appraisement at some length, and stating that the suit had been filed, Messrs. Breazeale & Breazeale closed as follows:

"We are perhaps more anxious than you are to close this matter, and are very anxious to carry out the agreement between you and ourselves."

The context shows that the "matter" and "agreement" related to the execution of the written contract which the attorneys had signed for their clients, and which was then in course of execution.

Judgment affirmed.